IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| ROBBIE W. BROCK, § § | |
| Plaintiff, § § § | CIVIL ACTION NO. 5:19-CV-50-RWS-CMC |
| v. § § § | |
| COMMISSIONER OF SOCIAL § SECURITY ADMINISTRATION § § | |
| Defendant. § | |

## ORDER

The above-entitled and numbered civil action was heretofore referred to United States Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636. The Report of the Magistrate Judge, which contains her proposed findings of fact and recommendations for the disposition of such action, has been presented for consideration (Docket No. 14). Plaintiff filed objections to the Report and Recommendation (Docket No. 17). The Court conducted a *de novo* review of the Magistrate Judge's findings and conclusions.

## BACKGROUND

On January 29, 2016, Plaintiff Robbie W. Brock ("Plaintiff") protectively filed his application for a period of disability and disability insurance benefits. Plaintiff alleged a disability onset date of January 20, 2016, due to psychiatric disorder, bipolar disorder, panic anxiety disorder, OCD, SAD, depression, hernia and acid reflux. (Tr. 154-63). The Commissioner of Social Security Administration denied his application at the initial and reconsideration levels. (Tr. 51-84). A hearing was held before an Administrative Law Judge ("ALJ") on February 20, 2018. (Tr. 24-50). The ALJ issued an unfavorable decision on July 17, 2018, finding Plaintiff not disabled. (Tr. 10-19). The Appeals Council

denied Plaintiff's request to review the decision, making the ALJ's decision the Commissioner's final administrative decision for purposes of the Court's review pursuant to 42 U.S.C. § 405(g).

## REPORT AND RECOMMENDATION

On September 4, 2020, the Magistrate Judge entered a Report and Recommendation ("R&R"), recommending Plaintiff's above-entitled and numbered social security cause of action be affirmed. Docket No. 14. The Magistrate Judge set forth in detail the medical evidence of record, including, among other evidence, the following evidence regarding Plaintiff's mental impairments for the relevant time period of January 20, 2016 through September 30, 2017, the date last insured. On January 19, 2016, Plaintiff reported to SW AR Counseling & Mental Health Center. (Tr. 295-96). Christina Scott, Ph.D., noted the following: "Client with Bipolar II symptoms in treatment for many years. Has mood swings. When depressed, feels no energy, fatigued, hopeless, has crying spells, has sleep disturbance. When manic, is irritable, hyperactive, has racing thoughts, trouble falling asleep, restless." (Tr. 295). Plaintiff also appeared for a medication appointment with Oladele Adebogun, M.D., and reported he felt less stressed and advised that his medications had helped. (Tr. 298-300). Dr. Adebogun noted Plaintiff had distractible attention; regarding memory, Plaintiff was able to recall one of three items in three minutes. (Tr. 299). Dr. Adebogun noted Plaintiff was under a contractual agreement not to fill any prescription for any other benzodiazepines from other prescribers, noting withdrawal seizures and memory dysfunction had been linked to long term Benzodiazepine use. (Tr. 298).

Plaintiff presented to Collom & Carney Clinic on April 21, 2016, for an appointment with Paul Gardial, M.D., with complaints of urinary frequency, shakes and tremors. (Tr. 320-25). The record noted the tremors (abnormal movements) in Plaintiff's hands were mild in severity; occurred intermittently; and were aggravated by stress or tension. (Tr. 320). "Relieving factors include[d] medication (status: improved)." (Tr. 320). Plaintiff reported the following symptoms: fatigue, urinary

frequency, anxiety and insomnia. (Tr. 322). On examination, Plaintiff's orientation and memory were normal, and Plaintiff had an appropriate mood and affect. (Tr. 323). Dr. Gardial opined the tremors were due mainly to "anxiety and could possibly be due to his psych meds." (Tr. 324).

In May 2016, Plaintiff appeared at SW AR Counseling & Mental Health. (Tr. 311-13). He noted less stress and no longer feeling rage and frustration. (Tr. 311). Dr. Adebogun noted Plaintiff had no problems sleeping, but Plaintiff did advise of "daytime sleepiness, diminished ability to think or concentrate, or indecisiveness." (Tr. 311). Dr. Adebogun reported as follows: "Assures me recognizes obsessional intrusive thinking but remains in supportive reassurance, engage relaxation therapy and cognitive behavioral intervention. Overall coping well and more hopeful, minimized easy overwhelmed feeling but assures me compliant to medicine as prescribed and 'my meds helping me.'" (Tr. 311).

On June 8, 2016, Plaintiff was evaluated by Myrtle Karam Jeroudi, M.D., a neurology resident at UT Southwestern Medical Center, regarding abnormal involuntary movements. (Tr. 472-78). The consultation note included Plaintiff's past medical history of bipolar disorder, OCD and anxiety and visits regarding episodic memory problems "felt to be due to his psychiatric illness and was referred to General Neurology Clinic for tremor in both hands." (Tr. 473). It was noted that Plaintiff was taking a Buspar during each episode (which last 2-3 minutes), and Buspar "will totally resolve the episodes." (Tr. 473). Plaintiff stated the tremor really upset him and interfered with his work. (Tr. 473). Plaintiff further stated he had been taking psychotropic medications for forty years but stated none of his medications "were temporally associated with the onset of the tremor." (Tr. 473).

On neurological examination, Plaintiff was awake, alert, oriented to self, date and place; he had intact fund of knowledge and comprehension; he had normal naming, fluent speech, "2/3 recall (which was very upsetting to him)" and intact attention/concentration. (Tr. 475). Dr. Jeroudi noted he had personally reviewed the imaging/CT of Plaintiff's head and agreed it was unremarkable. (Tr. 476).

Under assessment and plan, Dr. Jeroudi opined the semiology was consistent with an essential tremor, but alternatively could be a physiologic tremor related to medications or anxiety. (Tr. 476). At a follow-up appointment, Plaintiff noted the prescribed medication worked well, but when he increased the dosage, he became agitated and fatigued. (Tr. 493, 495).

Plaintiff reported for an appointment with Dr. Adebogun at SW AR Counseling & Mental Health on September 20, 2016. (Tr. 671-73). Plaintiff noted less stress and rage, and he had reduced depressed mood. (Tr. 671). Plaintiff returned in December 2016 for another pharmaceutical management appointment and again noted his medications were helping. (Tr. 674).

In March 2017, Plaintiff presented to SW AR Counseling & Mental Health Center for an appointment with Linda Martin, Psychiatric RN. (Tr. 680-82). She reported Plaintiff's presenting problems as follows:

> Bipolar II Disorder: Feelings of having a dark cloud over his head, history of suicidal ideation, anger, crying spells - starting at age 25. Manic episodes in the past, high energy level, anxiety beginning in childhood including stomach problems, feeling tense and rigid, bone and joint pain, grandiose irritability, elevated mood, pressured speech, flight of ideas, poor focus, risky behavior, depressed mood most of the day, loss of interest in once pleasurable activities, feelings of worthlessness, loss of energy, most days at times, palpitations, sweating, shaking, sensation of smothering, feeling of chocking (sic), fear of losing control.

(Tr. 680).

Plaintiff returned to SW AR Counseling & Mental Health Center for an appointment with Nurse Martin on September 26, 2017. (Tr. 772-73). Plaintiff again noted his medications had helped. (Tr. 772). In January 2018, Plaintiff appeared for a pharmacology management appointment at SW AR Counseling & Mental Health Center. Noting Plaintiff history of bipolar disorder, Dr. Adebogun reported the following: "'My meds helping me but I stay in a funk, not wanting to do anything,' has reduced unrealistic fear, paranoia and aggression dyscontrol, depressed mood, poor motivation and interest. Has

mindedness improve frustration dyscontrol and improve passionate interest. Has preponderant somatization masking depressive mood, motivation and interest. Need continue in current supportive structure. . . . Adaptive functioning. Has been having passing out spells of syncope, has pending neurology appt. . . . Has fragile psychodynamic mindedness." (Tr. 926).

At the request of the Agency, Ashok L. Khushalani, M.D. reviewed the record in May 2018 and prepared a Medical Source Statement of Ability to Do Work-Related Activities (Mental). (Tr. 930-40). Dr. Khushalani opined Plaintiff has no impairments in the abilities to understand and remember simple instructions, to carry out simple instructions and to make judgments on simple work-related decisions. (Tr. 930). Dr. Khushalani opined Plaintiff, because of his bipolar disorder, has moderate impairments in the abilities to understand and remember complex instructions, carry out complex instructions and to make judgments on complex work-related decisions. (Tr. 930). According to Dr. Khushalani, Plaintiff is mildly limited in his ability to interact appropriately with supervisors and co-workers and moderately limited in his ability to interact appropriately with the public and to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 931).

In a Medical Interrogatory – Mental Impairment(s) – Adult, Dr. Khushalani opined Plaintiff's ability to concentrate, persist or maintain pace is only mildly limited. (Tr. 934). He noted Plaintiff is mildly limited in his ability to understand, remember or apply information and mildly limited in his ability to interact with others. (Tr. 934). However, Dr. Khushalani opined Plaintiff is moderately limited in his ability to adapt or manage himself. (Tr. 934). Dr. Khushalani noted Plaintiff reported on October 7, 2014, that his work was not stressful, just boring at times; Plaintiff subsequently retired from that job; and several medical records indicate Plaintiff was stable and doing reasonably well. (Tr. 934). Dr. Khushalani found no "severity outlined in the record to meet 12.06 (2) – bipolar d/o. There are no consistent records regarding his panic d/o – (12.06)." (Tr. 935). He opined Plaintiff is able to do "simple

and detailed tasks with occasional public contact." (Tr. 937).

The Magistrate Judge also discussed Plaintiff's hearing testimony regarding his bipolar disorder, memory problems and medication side effects. Among other things, Plaintiff testified he can lift fifty pounds, he can stand, walk or move around for about thirty minutes and he has no limitations with sitting. (Tr. 42). Plaintiff further testified he could not continue working because of stress. According to Plaintiff, he would have moments at his last job when he could not find his way around. (Tr. 32).

In his first ground for relief, Plaintiff argues the ALJ erred in assessing Plaintiff's mental residual functional capacity. In part relevant to Plaintiff's first argument, the ALJ determined that Plaintiff could perform work involving only simple and routine work tasks, which require no more than occasional interaction with coworkers, supervisors and the public. (Tr. 14). Among other things, Plaintiff asserts the ALJ failed to properly address his dementia, confusion, intermittent explosive disorder, blackouts and medication side effects and erroneously found Plaintiff had primarily stable psychiatric symptoms. Docket No. 10 at 3-15. According to Plaintiff, while medications are improving his intermittent explosive disorder, panic attacks, anxiety and depression, they are worsening his dementia, tremors, memory loss, lack of concentration and chronic fatigue. Plaintiff also suggested the ALJ erred in giving great weight to the opinions of Dr. Khushalani, arguing the ALJ should have instead ordered cognition testing.

In his second ground for relief, Plaintiff asserts the ALJ erred in assessing his physical residual functional capacity at the medium exertional level,[1] arguing his physical impairments should be considered with his mental impairments. Docket No. 10 at 15-20. In part relevant to Plaintiff's second

---

[1] A full range of medium work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds. 20 C.F.R. § 404.1567(c). It also requires standing or walking, off and on, for a total of approximately six hours in an eight-hour workday in order to meet the requirements of frequent lifting and carrying. SSR 83-10, 1983 SSR LEXIS 30, *15.

argument, the ALJ determined that, through the date Plaintiff was last insured, Plaintiff had the residual functional capacity to perform medium work, except he could frequently climb stairs and ramps but never climb ladders, ropes or scaffolds; and could frequently balance, kneel, stoop, crouch and crawl. (Tr. 14).

In her discussion, the Magistrate Judge first agreed with the Commissioner that many of the conditions Plaintiff lists as "diagnosed impairments" were not "diagnosed" but were reports of Plaintiff's subjective complaints, many of which were made outside the relevant period, January 20, 2016, through September 30, 2017. Docket No. 14 at 27 (noting, for example, that in April 2015 Plaintiff presented with subjective complaints of confusion and memory loss, but after cognition testing, the attending physician opined "this is not the presentation of a degenerative neurocognitive disorder but instead is a presentation that is consistent with the attentional difficulties seen with psychiatric illnesses (which, fortunately, are now improved compared to his difficulties just a week or so ago)").

The Magistrate Judge then explained that even assuming these were actual diagnoses, Plaintiff still could not demonstrate harm. *Id.* As stated by the Magistrate Judge, the appropriate inquiry is whether a claimant's impairments result in functional limitations that render him unable to perform his past work or any other work. *Id.* (citing *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990) (citing 42 U.S.C. § 423(d)(2)(A)); also citing *Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (diagnosis of depression, without more, does not necessitate a finding of disability)). The Magistrate Judge noted the ALJ found the limiting effects claimed by Plaintiff are not entirely consistent with other evidence in the record.

The Magistrate Judge found substantial evidence supports the ALJ's assessment of Plaintiff's mental residual functional capacity. The Magistrate Judge concluded Plaintiff failed to prove harmful error in the ALJ's evaluation of Plaintiff's mental impairments. The Magistrate Judge also found

without merit Plaintiff's suggestion that the ALJ should have ordered a consultative examination for "cognition testing," noting Plaintiff underwent mental status examinations during the relevant period that did not reveal greater limitations than the ALJ assessed. *Id*. at 30. According to the Magistrate Judge, Plaintiff failed to show that such examination would have been at all helpful, let alone necessary. *Id*. at 29-30.

The Magistrate Judge also found Plaintiff's second ground for relief without merit. Specifically, the Magistrate Judge concluded substantial evidence supports the ALJ's assessment of Plaintiff's physical residual functional capacity. *Id*. at 29-31.

## OBJECTIONS

Plaintiff objects to the Magistrate Judge's recommendation that the above-referenced social security cause of action be affirmed. Plaintiff asserts he has suffered for years with mental health issues and his symptoms are not controlled with medication. Plaintiff asserts the ALJ should have ordered a consultative examination for "cognition testing" because the "records show a consistent and cognitive decline in Plaintiff's mental health." Docket No. 17 at 5. Plaintiff further asserts the ALJ did not address the fact that he is endorsing a worsening of his symptoms or that his confusion and memory loss is the result of the Lithium and other medications. *Id*. at 7. According to Plaintiff, he was scheduled to see another neurologist regarding his black-outs. *Id*. at 4-5.

## *DE NOVO* REVIEW

### *Sequential evaluation process and burden of proof*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (2012). First, a claimant who, at the time of his disability claim, is

engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(a)(4)(i) (2012). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(a)(4)(ii) (2012). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1 (2011). 20 C.F.R. § 404.1520(a)(4)(iii) (2012). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(a)(4)(iv) (2012). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v) (2012).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. At the last step, the burden shifts to the Commissioner. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). If at any step the Commissioner finds the claimant is or is not disabled, the inquiry terminates. *Id*. If the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical–Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen,* 810 F.2d 1296, 1304 (5th Cir.1987).

### *The ALJ's findings*

On July 17, 2018, the ALJ issued a decision denying Plaintiff's application for a period of disability and disability insurance benefits (Tr. 10-19). The ALJ made the following findings. At step one,

the ALJ found Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset day of January 20, 2016, through his date last insured of September 30, 2017. (Tr. 12). At step two, the ALJ determined Plaintiff has severe impairments of diabetes, bipolar disorder, anxiety disorder and obsessive-compulsive disorder (OCD). (Tr. 12). At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 13).

Before going to step four, the ALJ also found Plaintiff retains the residual functional capacity for medium work except frequent climbing of stairs and ramps, balancing, kneeling, stooping, crouching and crawling but never climbing ladders, ropes or scaffolds. (Tr. 14). According to the ALJ, Plaintiff can maintain attention and concentration sufficiently to perform simple, routine work tasks and occasionally interact with coworkers, supervisors and the public. (Tr. 14).

At step four, the ALJ found Plaintiff was not able to perform any of his past relevant work. (Tr. 17). The ALJ noted Plaintiff was sixty-five years old and closely approaching retirement age. (Tr. 18). Considering Plaintiff's age, education, work experience and residual functional capacity, the ALJ further determined there were jobs that exist in significant numbers in the national economy Plaintiff could perform. (Tr. 18). At step five, the ALJ determined Plaintiff was not under a disability, as defined in the Social Security Act, at any time from January 20, 2016 through September 30, 2017. (Tr. 19).

*Discussion*

The overarching issues before the Court are whether substantial evidence of record supports the Commissioner's decision that Plaintiff was not disabled during the relevant period, and whether the ALJ applied the correct legal standards in reaching that decision. In his objections, Plaintiff reasserts the arguments raised before the Magistrate Judge regarding the ALJ's assessment of his mental

residual functional capacity.

Residual functional capacity, or RFC, is defined as the most that a person can still do despite recognized limitations. *Scott C. P. v. Berryhill*, No. 3:18-CV-00036-D-BH, 2019 WL 1318365, at *11 (N.D. Tex. Feb. 26, 2019), *report and recommendation adopted*, No. 3:18-CV-0036-D, 2019 WL 1315894 (N.D. Tex. Mar. 22, 2019) (citing 20 C.F.R. § 404.1545(a)(1)). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Scott*, 2019 WL 1318365, at *11 (quoting Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996)). An individual's residual functional capacity should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources. *Scott*, 2019 WL 1318365, at *11 (citing 20 C.F.R. § 404.1545(a)(3) (2012); SSR 96-8p, 1996 WL 374184, at *1).

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). An ALJ may find that a claimant has no limitation or restriction as to a functional capacity when there is no allegation of a physical or mental limitation or restriction regarding that capacity, and no information in the record indicates that such a limitation or restriction exists. *Scott*, 2019 WL 1318365, at *11 (citing SSR 96-8p, 1996 WL 374184, at *1). The ALJ's residual functional capacity decision can be supported by substantial evidence even if she does not specifically discuss all the evidence that supports her decision or all the evidence that she rejected. *Scott*, 2019 WL 1318365, at *11 (citing *Falco v. Shalala*, 27 F.3d 16, 164 (5th Cir. 1994)).

A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Scott*, 2019 WL 1318365, at *11 (citing *Leggett*, 67 F.3d at 564). Nevertheless, the substantial evidence review is not an

uncritical "rubber stamp" and requires "more than a search for evidence supporting the [Commissioner's] findings." *Scott*, 2019 WL 1318365, at *11 (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984) (citations omitted in *Scott*)). Courts "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting the" ALJ's decision. *Id.* Courts may not reweigh the evidence or substitute their judgment for that of the Secretary, however, and a "no substantial evidence" finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Scott*, 2019 WL 1318365, at *11 (citing *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988) (citations omitted in *Scott*)).

Here, in assessing Plaintiff's residual functional capacity, the ALJ did not reject Plaintiff's subjective complaints, including memory loss and confusion, but rather discounted them because he found the alleged limiting effects not entirely consistent with other evidence in the record. The Court's review of the evidence shows that Plaintiff experienced memory loss and other mental health issues, but does not show that these conditions were as limiting as he claims. As pointed out by the Magistrate Judge, the ALJ discussed the medical evidence, which was inconsistent with Plaintiff's allegations of disabling mental limitations (Tr. 15-17) and, because the treatment records did not include specific assessments of Plaintiff's work-related mental limitations, the ALJ permissibly relied on the opinion of a psychiatric expert, Ashok Khushalani, M.D., in order to assess Plaintiff's mental residual functional capacity. Docket No. 14 at 28 (citing *Richardson v. Perales*, 402 U.S. 389, 408 (1971) (ALJ may rely upon testimony of a medical expert when evaluating the nature and extent of a claimant's impairments)).

The ALJ's residual functional capacity assessment limited Plaintiff to performing work involving only simple and routine work tasks, which require no more than occasional interaction with coworkers, supervisors and the public. (Tr. 14). This finding reflects mental limitations limitations consistent with

the evidence of record. When Dr. Khushalani reviewed the record in May 2018, it included all the evidence from the relevant period and opined that Plaintiff's mental impairment was stable and that Plaintiff was doing reasonably well. (Tr. 934). Dr. Khushalani opined that Plaintiff could understand, remember and carry out simple instructions, and was only mildly to moderately limited in interacting with others. (Tr. 930-31).

The Supreme Court has recently reiterated how deferential the substantial evidence standard is to the ALJ's decision, noting as follows:

> The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC v. Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The evidence set forth in detail in the 31-page Report and Recommendation (including the opinions of Dr. Khushalani) is "substantial evidence," as it is more than a scintilla and a reasonable mind could readily accept it as adequate to support the ALJ's findings that Plaintiff is limited to performing medium work involving only simple and routine work tasks, which require no more than occasional interaction with coworkers, supervisors and the public.

Plaintiff argues the ALJ erred by not ordering a consultative examination for "cognition testing." Among other things, Plaintiff states it is unclear if the confusion, memory loss and/or dementia he is

experiencing are a result of medication or a decline in cognition. According to Plaintiff, "a consultative exam with testing [on remand] could answer this very important question." Docket No. 17 at 10. The Commissioner argues there was sufficient evidence in the record for the ALJ to determine whether Plaintiff's mental health issues were disabling, and any additional mental testing after September 2017 would not have been probative evidence of Plaintiff's condition during the relevant period because the relevant period ended on September 30, 2017. Docket No. 13 at 6-7. Thus, according to the Commissioner, there was no need for the ALJ to further develop the record with a consultative mental examination. *Id.* at 7.

While a consultative examination may assist the ALJ in fully developing the factual record (§ 404.1517), the decision to order such an examination remains within the ALJ's discretion. *Hayes v. Colvin*, No. 5:15-CV-241-BQ, 2016 WL 8078308, at *6 (N.D. Tex. Nov. 4, 2016), *report and recommendation adopted*, No. 5:15-CV-241-C, 2017 WL 384873 (N.D. Tex. Jan. 26, 2017) (citing *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989)). An examination need not be purchased "unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision." *Id.* (quoting *Anderson*, 887 F.2d at 634 (citing *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977))). "To determine whether the ALJ fully and fairly developed the record, we ask whether the record contained sufficient evidence for [her] to make an informed decision. So long as such evidence exists, the ALJ need not have supplemented the record with additional evidence." *Landers v. Berryhill*, No. 4:17-CV-3526, 2018 WL 6732991, at *10 (S.D. Tex. Oct. 24, 2018), *report and recommendation adopted*, No. CV H-17-3526, 2018 WL 6732911 (S.D. Tex. Nov. 26, 2018) (quoting *Harvey v. Astrue*, No. 12-2267, 2013 WL 2244282, at *11 (E.D. La. May 21, 2013) (quoting *Hernandez v. Astrue*, 269 Fed. Appx. 511, 515 (5th Cir. 2008))). Furthermore, if the ALJ fails to fully develop the record, the claimant must "still show prejudice in the

form of evidence before the district court that would have altered the outcome." *Norden v. Barnhart*, 77 Fed. Appx. 221, 224 (5th Cir. 2003) (citing *Kane v. Heckler*, 731 F.2d 1216, 1219–20 (5th Cir. 1984)).

Here, the ALJ considered the entire medical record from 2015 through the date last insured. The ALJ stated that prior to his September 30, 2017, date last insured, the record showed Plaintiff had "primarily stable psychiatric symptoms." (Tr. 16). According to the ALJ, while Plaintiff's attention span and concentration appeared distracted, Plaintiff was able to follow along in conversation and provide details regarding work history and current activities and he presented as cooperative, pleasant and polite and generally got along with examiners. (Tr. 16). The ALJ further noted Plaintiff's reported memory problems were not supported by neurological testing. (Tr. 16).

As noted by the Magistrate Judge, in April 2015 Plaintiff presented at UT Southwestern Medical Center with subjective complaints of confusion and memory loss and a screening test of cognition was performed at that time. Benjamin James Williams, M.D., noted Plaintiff's history of bipolar disorder, OCD and anxiety, with episodes of confusion and memory loss, along with Plaintiff's wife's concern about Plaintiff's "angry outbursts." (Tr. 240). On examination, Plaintiff had increased psychomotor activity with increased speech output. (Tr. 240). Dr. Williams noted Plaintiff sometimes required redirection but otherwise followed commands without difficulty. (Tr. 240). In contrast to Plaintiff's claim of diagnosed "dementia," Dr. Williams opined Plaintiff's cognitive complaints were most likely secondary to his psychiatric disease, particularly since the symptoms correlated with anxiety and were not described as the "gradual progression of symptoms" that would be expected from dementia. (Tr. 240). Dr. Williams' assessment was as follows:

> Memory concerns in an individual with psychiatric difficulties and who scored essentially normally on today's screening test of cognition. In addition, the basic neurologic exam, head CT, and labs were also normal. A lengthy discussion was held

> today emphasizing that this is not the presentation of a degenerative neurocognitive disorder but instead is a presentation that is consistent with the attentional difficulties seen with psychiatric illnesses (which, fortunately, are now improved compared to his difficulties just a week or so ago).

(Tr. 243, 410).

The Court finds there was sufficient evidence from before and during the relevant time period from which the ALJ was able to make a disability determination, including the 2015 opinions of Dr. Williams regarding Plaintiff's cognitive complaints. "Plaintiff [did] not show that additional evidence was necessary, or that the ALJ's decision was based on insufficient facts." *Landers*, 2018 WL 6732991, at *10 (quoting *Isbell v. Colvin*, No. 1:14-CV-6, 2015 WL 1208122, at *4 (N.D. Tex. Mar. 16, 2015) (citations omitted in *Landers*)).

Even if the ALJ should have developed the record further, reversal would be appropriate only if the Plaintiff can show he was prejudiced by this failure. *Id.* at *11 (citing *Reliford v. Colvin*, No. H-12-1850, 2013 WL 1787650, at *15 (S.D. Tex. Apr. 25, 2013) (citing *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000))). "A mere allegation that beneficial evidence might have been gathered had the error not occurred is insufficient to meet this burden." *Jones v. Astrue*, 691 F.3d 730, 735 (5th Cir. 2012). Plaintiff makes no particularized showing of prejudice, arguing only that cognition testing might provide an answer as to whether Plaintiff's memory loss and other symptoms are a result of medication or a decline in cognition. Nor does Plaintiff show how further cognition testing would be probative evidence of Plaintiff's condition during the relevant period which ended on September 30, 2017. Therefore, Plaintiff's argument fails to show reversal is necessary.

In conclusion, the Court notes "[t]he Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot fund substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Legget v. Chater*,

67 F.3d 558, 565-66 (5th Cir. 1995). Having reviewed the record, the Court determines the record shows the Commissioner correctly applied the applicable legal standards and that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled.

After reviewing the transcript, the briefs of the parties and the Report and Recommendation, the Court finds Plaintiff's objections are without merit. The Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct. Therefore, the Court hereby **OVERRULES** Plaintiff's objections (Docket No. 17) and **ADOPTS** the Report and Recommendation of the United States Magistrate Judge (Docket No. 14) as the findings and conclusions of this Court. Accordingly, it is hereby

**ORDERED** that the above-entitled Social Security action is **AFFIRMED**.

**So ORDERED and SIGNED this 28th day of September, 2020.**

*[signature: Robert W. Schroeder III]*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE